HiUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Z TECHNOLOGIES CORPORATION,

        Plaintiff,                       CASE NO. 12-12206
                                                 HON. LAWRENCE P. ZATKOFF

v.

THE LUBRIZOL CORPORATION,

        Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on the 5th day of February, 2013

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Defendant's Motion to Dismiss First Amended Complaint (Docket #7).  The Motion has been fully briefed.  The Court finds that the facts and legal arguments pertinent to the Motion are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments.  Therefore, pursuant to E.D. Mich. Local R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted by the parties, without this Court entertaining oral arguments.  For the reasons that follow, Defendant's Motion is granted.

## II. BACKGROUND

Plaintiff filed this action because Defendant allegedly monopolized the market for unmodified oxidates in the United States following Defendant's purchase of the Lockhart Company's ("Lockhart") entire metalworking product line, including oxidates, on February 7, 2007. Oxidates are made, essentially, from oxidized petroleum based wax. Wax oxidates (literally wax that is infused with oxygen during a reaction process) are a component of finished rust protection products that generally are applied to metal surfaces to inhibit rust corrosion. Wax oxidates are used in a variety of applications. Plaintiff utilizes unmodified oxidates to manufacture and sell anti-corrosion products to vehicle manufacturers and others.

Commencing in 2000, when Defendant purchased RPM International, Inc.'s 'Alox' metalworking additives business, including anti-corrosion additives like oxidates, the only two significant producers of oxidates in the United States were Defendant and Lockhart. When Defendant purchased Lockhart's assets on February 7, 2007, the two companies together were selling over 98% of all oxidates in the United States. Therefore, Plaintiff alleges that after that acquisition, Defendant was the only meaningful manufacturer of oxidates in the United States and controlled virtually the entire market. The asset purchase agreement between Defendant and Lockhart included a non-competition agreement that prevented Lockhart from competing with Defendant in any of the product markets for the assets purchased.

After the acquisition, Defendant moved all manufacturing to its own plant and allegedly "construed or exerted the purchase agreement" to prevent the use or re-lease of Lockhart's plant in Flint (which was not a purchased asset) to another oxidates manufacturer. Plaintiff contends that the construction of a new facility to manufacture oxidates is extremely time consuming and

expensive and this restriction on the Flint plant posed a high barrier to entry. Over the next two years, Defendant allegedly increased oxidates prices incrementally, including the prices for the unmodified oxidates purchased by Plaintiff. Plaintiff alleges that prices were increased in March, July and November 2007 and in May, July and September 2008, and that such prices were allegedly "supra-competitive."

On February 26, 2009, the Federal Trade Commission ("FTC") issued a Complaint against Defendant regarding the acquisition of the Lockhart assets. The FTC alleged that Defendant's acquisition of Lockhart's assets lessened competition and created "a monopoly in the relevant market."[1] The FTC also alleged that the market concentration, measured by Herfindahl-Hirschman Index ("HHI"), rose from 7,007 to 9,697.[2] On April 7, 2009, the FTC resolved the Complaint by entering into an Agreement Containing Consent Order ("Consent Agreement") with Defendant and issuing a Decision and Order, the result of which was that Defendant had to divest the assets it had purchased from Lockhart in 2007. Plaintiff alleges that under the terms of the Consent Agreement, Defendant was "required to transfer control of substantially all of the assets it had purchased from Lockhart [pursuant to the February 7, 2007 asset purchase agreement] to Additives International, LLC" ("Additives"). Pursuant to the Decision and Order, Defendant had to share with Additives

---

[1] The FTC's Complaint defined the relevant market as oxidates, their functional equivalents, and products derived from oxidates. Plaintiff purchases unmodified oxidates, which is a segment of the broader market involved in the Commission's action.

[2] HHI is a measure of market concentration utilized by the FTC and the Antitrust Section of the Department of Justice to assist with the analysis of mergers. The Horizontal Merger Guidelines, which are published jointly by the two agencies and were revised in 2010, provide, for example, that "[m]ergers resulting in highly concentrated markets [defined by an HHI of more than 2500] that involve an increase in the HHI of more than 200 points will be presumed to be likely to enhance market power." Horizontal Merger Guidelines, DEPT. OF JUSTICE & FEDERAL TRADE COMMISSION, § 5.3 (2010), *available at* http://www.justice.gov/atr/public/guidelines/hmg-2010.html#5c.

some of the wax oxidate formulations that it acquired from Lockhart, but Defendant also was allowed to continue to manufacture the same Lockhart wax oxidates in competition with Additives.

Plaintiff filed this action on May 18, 2012, alleging: (1) violations of Section 7 of the Clayton Act, 15 U.S.C. § 18 (Count I), and Section 2 of the Sherman Act, 15 U.S.C. § 2 (Count II); and (2) unlawful acquisition and monopolization claims pursuant to Section 3 of M.C.L. § 445.773 (Counts III and IV).

### III. LEGAL STANDARD

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a plaintiff's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in the plaintiff's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *See also Ashcroft v. Iqbal*, 556 U.S. 662, 696-97 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm.

Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000). If, in deciding the motion, the Court considers matters outside the pleadings, the motion will be treated as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d).

## IV. ANALYSIS

The parties agree that all four counts of Plaintiff's Complaint are subject to a four-year statute of limitations. It is undisputed that: (1) Lockhart merged with Defendant on February 7, 2007, when Defendant purchased certain of Lockhart's assets, and (2) Plaintiff filed its Complaint on May 18, 2012. As the time between the merger and the filing of the Complaint is more than five years and three months, Defendant contends that all four counts are time-barred. Plaintiff contends that February 7, 2007, is not the most recent date from which the statute of limitations should be measured because the law affords the application of subsequent dates for purposes of triggering the statute of limitations.

**A.     Count I - Section 7 of the Clayton Act**

> Section 7 of the Clayton Act prohibits acquisitions that serve "substantially to lessen competition, or to tend to create a monopoly," 15 U.S.C. § 18, and contains a four-year statute of limitations for private actions, 15 U.S.C. § 15b. *Section 7 exists primarily to arrest, at their incipiency, mergers that could produce anti-competitive results. . . . Generally, a "Section 7 action challenging the initial acquisition of another company's stocks or assets accrues at the time of the merger or acquisition."*

*Midwestern Machinery Co., Inc. v. Northwest Air., Inc.*, 392 F.3d 265, 269 (8th Cir. 2004) (emphasis added) (citing *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1050 (8th Cir. 2000), *cert. denied*, 531 U.S. 979 (2000)).

5

As the Seventh Circuit has stated:

> the statute of limitations is not tolled simply in order to wait and see just how well the defendant does in the market from which he excluded the plaintiff. Otherwise it would be tolled indefinitely in a very large class of antitrust suits.

*Brunswick Corp. v. Riegel Textile Corp.*, 752 F.2d 261, 271 (7th Cir. 1984), *cert. denied*, 472 U.S. 1018 (1985). Likewise, the Ninth Circuit has discussed the policy reasons for the four-year statutory limitations period for acquisition claims:

> The four-year limitation of Clayton Act §4B for private anti-trust actions for damages is long enough to enable potential plaintiffs to observe the actual effects of a possible antitrust violation and calculate its potential effects. The abuses which would occur if plaintiffs were permitted to search the history of other firms and challenge at their pleasure any possible violations, no matter how old, seem apparent.

*International Tel. & Tel. Corp. v. General Tel. & Elecs. Corp.*, 518 F.2d 913, 929 (9th Cir. 1975), *overruled on other grounds, California v. American Stores Co.*, 495 U.S. 271 (1990).

Plaintiff argues that "holding assets violates antitrust law as much as acquiring them," and that "while typically Clayton Act Section Seven violations accrue at the time of the initial merger, . . . when the acquiring firm changes the way it uses the acquired assets, the statute of limitations is restarted." *Midwestern Machinery*, 392 F.3d at 269, 272 (citations omitted) ("Clayton Act claims are not limited to challenging the initial acquisition of stocks and assets ... since 'holding as well as obtaining assets' is potentially violative of section 7."). *See also U.S. v. ITT Cont'l Banking Co.*, 420 U.S. 223, 240 (1975) ("We do not need to go beyond the Clayton Act itself to conclude that 'acquisition' as used in s 7 of the Act means holding as well as obtaining assets.").[3]

---

[3]As set forth in *Midwestern Machinery*, "<u>*ITT* is not useful to [Plaintiff] because it . . . did not concern a statute of limitations</u>. In that case, ITT and the Federal Trade Commission had entered

"Section 7 actions challenging the holding or use of assets remain subject to the four year limitations period, and the normal antitrust accrual rule applies. The limitations period thus starts to run at 'the point the act first causes injury.'" *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190-91 (1997) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339-40 (1971); *E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 598 (1957) (action accrues when "threat of the prohibited effects is evident").

It is undisputed that the price increases initiated by Defendant in 2007 and 2008 do not constitute a change in the way Defendant "used" any asset obtained by Defendant pursuant to the asset purchase agreement signed by Defendant and Lockhart on February 7, 2007. Plaintiff contends, however, that: (a) Defendant's decision to interpret the non-competition agreement in the asset purchase agreement to prevent the re-leasing of the Flint plant, and (b) the actual prevention of re-leasing of the Flint plant to prospective oxidates manufacturers, constituted a new use of an asset purchased in the merger. Plaintiff states that although the asset purchase agreement contained a non-competition clause, it was only later that "this asset, the non-competition clause, was construed or enforced to preclude the re-lease of the Flint plant." Plaintiff relies on an allegation at paragraph five of the FTC Complaint: "[Defendant] *subsequently* indicated that this provision barred Lockhart from leasing its plant in Flint, Michigan, to another oxidates manufacturer." (emphasis added by Plaintiff). Thus, Plaintiff argues, Defendant's use of the non-competition clause after the acquisition was new and fits within the "new use" doctrine.

---

into a consent order for ITT's alleged violations of the Clayton Act[.] The order prohibited ITT from acquiring any other bakeries for ten years, and ITT violated that order. The case before the Supreme Court concerned the amount of damages ITT owed for violating that order." *Id.* at 273 (internal citations omitted) (emphasis added).

Defendant responds that the "hold-and-use" doctrine relied upon by Plaintiff applies only where an acquiring firm takes some action *after the transaction* to use an acquired asset in a way that causes a new or different injury to competition and Plaintiff. *Midwestern Machinery*, 392 F.3d at 272, 275 ("Holding and using assets restarts the statute of limitations only when the use of the assets differs after the merger, while continuing violations restart the statute of limitations when there is an ongoing scheme, such as a price-fixing conspiracy or an attempt to monopolize."); *Concord Boat*, 207 F.3d at 1052. "Where the injury was sustained at the time of the acquisition, the limitations period ... cannot be extended on the basis of the holding and use of the acquisition." *Midwestern Machinery*, 392 F.3d at 275 (citation and internal quotations omitted). Thus, Defendant argues, the "hold-and-use" doctrine does not apply when the merger itself caused Plaintiff the same kind of injury as the "new" use of the asset. *Midwestern Machinery*, 392 F.3d at 272 (citing *Concord Boat*, 207 F.3d at 1052) ("since holding and using assets acquired in a merger in the same manner as they were used at the time of the merger is merely an unabated inertial consequence of the merger, ... only different uses of assets can justify restarting the statute of limitations").

In addition, as Defendant notes, and Plaintiff does not challenge, "[c]ontinuing violations have not been found outside the RICO or Sherman Act conspiracy context ... because acts that 'simply reflect or implement a prior refusal to deal or acts that are merely unabated inertial consequences (of a single act) do not restart the statute of limitations.'" *Concord Boat*, 207 F.3d at 1052 (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467-68 (6th Cir. 1996) (citations and internal quotations omitted)). "In other words, to apply the continuing violation theory to non-conspiratorial conduct, new overt acts must be more than unabated inertial consequences of the initial violation." *Midwestern Machinery*, 392 F.3d at 270. "Applying this rationale to mergers

[under Section 7 of the Clayton Act] makes no sense. If the initial violation was the merger itself, none of the 'continuing violations' [a defendant could] allege can justify restarting the statute of limitations because these acts were not undertaken to further an illegal policy of merger or to maintain the merger." *Id*. at 271. "Once a merger is completed [as was the case here], there is no continuing violation possible under § 7 that would justify extending the statute of limitations beyond four years." *Id.* "That is because, even if the initial merger violated § 7, these allegations are not acts furthering the objectives of the merger. They may be acts that violate other antitrust laws, but they are not continuing violations of the Clayton Act sufficient to restart the statute of limitations." *Id.*

The Court agrees with Defendant. The Court finds that the non-competition agreement "asset" was triggered, and therefore "use" commenced, on the date the asset purchase agreement was effective, which was February 7, 2007. Therefore, the Court cannot conclude that the subsequent enforcement of the terms of the asset purchase agreement constitutes a "new use" of that asset, *i.e.*, the non-competition clause. Moreover, Defendant's prices were increased in March, July and November 2007. Thus, the very latest Plaintiff could have been aware of its alleged injuries and its potential Section 7 claim with respect to Defendant's holding and use of the assets in the 2007 merger was during calendar year 2007. As Plaintiff did not file its action until May 18, 2012, and it has not shown that the statute of limitations under Section 7 was tolled under any exception,[4] the

---

[4]The Court notes that it has added 40 days to the statute of limitations period to reflect the 40 days that the FTC proceeding was ongoing (February 26, 2009 to April 7, 2009). The addition of this 40 day period, however, is not enough to bring the May 18, 2012 Complaint filing date within the four-year statute of limitations period that expired no later than four years and 40 days after the price increases in 2007. In other words, in a light most favorable to Plaintiff and assuming that the triggering price increases occurred in November 2007 (even though the first price increases were in March 2007), Plaintiff would have had to file the Complaint by

9

Court holds that Plaintiff's Section 7 claim is time barred. Accordingly, as the Court finds that Plaintiff's Clayton Act claim must be dismissed.

**B.       Count II - Section 2 of the Sherman Act**

The Sherman Act prohibits monopolies that are attained through mergers as well as other non-merger conduct, such as a conspiracy. Under the Sherman Act, the statute of limitations is four years, but the limitations period begins again "each time a plaintiff is injured by an act of the defendants[, such that] a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act." *Zenith Radio Corp.*, 401 U.S. at 338; *Klehr*, 521 U.S. at 189 ("[E]ach sale to the plaintiff, 'starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.'"); *DXS, Inc. v. Siemens Med. Systs., Inc.*, 100 F.3d at 467. This "continuing violations theory" requires the Court to focus on the point at which the overt acts that caused the harm took place, not when the plaintiff suffered harm. *Peck v. General Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990).

> An overt act that restarts the statute of limitations is characterized by two elements: (1) it must "be a new and independent act that is not merely a reaffirmation of a previous act"; and (2) it must "inflict new and accumulating injury on the plaintiff."

*DXS, Inc.*, 100 F.3d at 467-68 (quoting *Pace Industr., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987)).

The Sixth Circuit has not addressed a fact pattern such as the one presented in this case. Plaintiff relies solely on a district court case from Minnesota for the proposition that "the alleged

---

approximately January 10, 2012 (*i.e.*, over four months before Plaintiff filed the Complaint).

charging of supra-competitive prices is not a mere detrimental effect. On the contrary, price increases are new and independent acts." *In re Wholesale Grocery Prods. Antitrust Litig.*, 722 F.Supp.2d 1079, 1087-88 (D. Minn. 2010). In this case, as in *Wholesale Grocery*, there: (1) is a purchase agreement wherein less than all of the assets were transferred to the defendant, and (2) were price increases subsequent to the acquisition. Plaintiff states that this case is stronger because Defendant not only increased prices after the purchase agreement but also took subsequent action to maintain the monopoly and create a barrier to entry into the oxidates market when Defendant construed the purchase agreement to preclude the re-leasing of the Flint plant. Plaintiff maintains that both the price increases and the actions to prevent the re-leasing of the Flint plant constitute overt acts within the continuing violation doctrine.

The Court is not persuaded by Plaintiff's reliance on *Wholesale Grocery*. In *Wholesale Grocery*, the court was faced with a conspiracy claim under Section 1 of the Sherman Act, not a merger monopoly claim under Section 2 of the Sherman Act. Unlike a merger monopoly claim, which is based on and is complete at the time of the merger, a conspiracy claim is continued and based on each conspiratorial act taken by the participants to the conspiracy. Therefore, when the defendants in *Wholesale Grocery* furthered their scheme by increasing prices, each such price increase reflected a new agreement to conspire to not compete with one another. The Court further notes that Plaintiff has offered no authority to support the proposition that price increases following a merger monopoly – as opposed to a monopoly that results from some other method, such as a conspiracy – supports a viable claim pursuant to Section 2 of the Sherman Act.

In this case, there is no dispute that the merger was complete on February 7, 2007. After February 7, 2002, no action occurred which served to "further" the merger or otherwise violate

Section 2 of the Sherman Act. As discussed above, the non-compete "asset" was triggered on the date the asset purchase agreement was effective, *i.e.*, on February 7, 2007, when the merger closed. The enforcement of the non-competition clause and the price increases that occurred thereafter were not new, independent, overt acts that were unrelated to the merger (or, in the words of Plaintiff, they were not acts that "had nothing to do with Defendant's acquisition of monopoly power"). Rather, the Court concludes that the increase in prices in 2007 and 2008, *i.e.*, the supra-competitive prices alleged by Plaintiff, simply were reaffirmations of a previous act (*i.e.*, the merger itself) and, as such, were "unabated inertial consequences" of such merger. As such, the Court concludes that the four-year statute of limitations applicable to Plaintiff's claim pursuant to Section 2 of the Sherman Act began to run on February 7, 2007, and expired before Plaintiff filed its Complaint in this case.

Accordingly, and for the reasons set forth above, the Court holds that Plaintiff's claim under Section 2 of the Sherman Act must be dismissed.

**C.    State Law Claims**

As stated by Plaintiff:

> The Michigan statute of limitations is also four years. Mich. Comp. Laws § 445.781. Michigan explicitly incorporates federal statutes and case law in the interpretation of its antitrust statutes, and thus the federal jurisprudence regarding when the statute of limitations is tolled or excepted should apply equally to Plaintiff's state law claims. *See* Mich. Comp. Laws § 445.784(2) (2009) (declaring the legislative intent is that "in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes, including, without limitation, the doctrine of per se violations and the rule of reason"); *Little Caesar Enters. v. Smith*, 895 F. Supp. 884, 898 (E.D. Mich. 1995) ("Michigan antitrust law is identical to federal law and follows the federal precedents.").

Therefore, with respect to Plaintiff's unlawful acquisition claim pursuant to the Michigan Antitrust

12

Reform Act, Section 3, M.C.L. § 445.773 (the Michigan state law counterpart to Plaintiff's Clayton Act claim), the Court concludes that such claim is time-barred and must be dismissed, for the reasons set forth in Section IV.A. above. Likewise, as Plaintiff's monopolization claim pursuant to the Michigan Antitrust Reform Act, Section 3, M.C.L. § 445.773, is to be construed in the same manner as Plaintiff's Sherman Act claim, the Court concludes that such claim be dismissed as time-barred for the reasons set forth in Section IV.B. above.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss First Amended Complaint (Docket #7) is GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED.

                                            S/Lawrence P. Zatkoff
                                            LAWRENCE P. ZATKOFF
                                            UNITED STATES DISTRICT JUDGE

Dated: February 5, 2013