RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0107p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

Z TECHNOLOGIES CORPORATION,

　　　　*Plaintiff-Appellant,*

*v.*

THE LUBRIZOL CORPORATION,

　　　　*Defendant-Appellee.*

No. 13-1254

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-12206—Lawrence P. Zatkoff, District Judge.

Argued: May 1, 2014

Decided and Filed: May 23, 2014

Before: DAUGHTREY, McKEAGUE, and DONALD, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Justin J. Hakala, MORGAN & MEYERS, PLC, Dearborn, Michigan, for Appellant. Elizabeth A. Grove, THE LUBRIZOL CORPORATION, Wickliffe, Ohio, for Appellee. **ON BRIEF:** Justin J. Hakala, MORGAN & MEYERS, PLC, Dearborn, Michigan, for Appellant. Elizabeth A. Grove, THE LUBRIZOL CORPORATION, Wickliffe, Ohio, for Appellee.

---

**OPINION**

---

　　McKEAGUE, Circuit Judge. Z Technologies alleges that The Lubrizol Corporation violated the Sherman, Clayton, and analogous state-law antitrust acts by raising prices and enforcing a non-compete clause following Lubrizol's acquisition of the assets of another

1

2:12-cv-12806-BPZ-MKM Doc # 17-5 Filed 05/23/14 Pg 2 of 18 Page ID 201 (2 of 18)

No. 13-1254        Z Tech. Corp. v. Lubrizol Corp.                    Page 2

company, which established a monopoly in the market for petroleum wax-based oxidates. Lubrizol moved to dismiss the claim on the pleadings. The primary question presented on appeal is whether Z Technologies's claims are barred by the statute of limitations. Z Technologies contends that the continuing violations and hold-and-use doctrines extend the statute of limitations on the Sherman and Clayton Acts, respectively. The district court rejected the continuing-violations argument after determining that the increase in prices by Lubrizol and the alleged implementation of a non-compete clause did not constitute a "new and independent" injury. The district court likewise found the hold-and-use argument inapplicable because Lubrizol's alleged implementation of a non-compete clause from the acquisition agreement was not a "new use" of an "asset" extending the statute of limitations. As the district court correctly rejected Z Technologies's continuing-violations and hold-and-use arguments, we AFFIRM.

## I. BACKGROUND

The Lubrizol Corporation is a chemical manufacturer that produces petroleum wax-based oxidates, which are used to create anti-corrosion products. Z Technologies is a purchaser of such oxidates and makes anti-corrosion products for car manufacturers. On February 7, 2007, Lubrizol acquired the Lockhart Company's ("Lockhart") oxidate business and oxidate assets. This acquisition left Lockhart's oxidate production facility in Flint, Michigan ("the Flint Plant") partially unused.

As part of the purchase agreement, Lockhart agreed to a non-compete clause that "prohibited Lockhart, for a period of five years from the date of the purchase agreement, from directly or indirectly engaging in any business competitive with the assets it sold to Lubrizol." Though it is not clear how or when it happened, Lubrizol allegedly later employed the non-compete clause "to prevent the use or re-lease of the [Flint Plant] to another oxidates manufacturer."

All the parties agree that the purchase of Lockhart provided Lubrizol with a monopoly in the oxidate market. At the time of the acquisition, Lubrizol and Lockhart together accounted for 98% of oxidate sales in the United States. After acquiring Lockhart, Lubrizol increased prices for oxidates in March, July, and November of 2007, and again in May, July, and September of 2008. These increases taken together raised the price of oxidates by approximately 70%.

2:12-cv-02061-PJZ-MKM Doc # 17 Filed 05/23/14 Pg 3 of 18 PageID 202 (3 of 18)

No. 13-1254          Z Tech. Corp. v. Lubrizol Corp.                     Page 3

Following the price increases, on February 26, 2009, the Federal Trade Commission brought a complaint alleging that, by acquiring Lockhart, Lubrizol created a monopoly in the oxidate market for rust-preventative additives and thereby violated Section 5 of the Federal Trade Commission Act and Section 7 of the Clayton Act. On April 7, 2009, Lubrizol entered into a consent agreement with the Federal Trade Commission in which Lubrizol promised: (1) to divest the oxidates assets acquired from Lockhart to a third company, Additives International, Inc.; (2) to "remove and rescind any prohibition or restraint including . . . any noncompete agreements, on the sale or use of all or any part of respondent Lockhart's Flint Plant for the manufacture and sale of any products produced at the Flint Plant by Additives International or any other person;" and (3) to lease the Flint Plant to Additives International.

Z Technologies filed its Complaint on May 18, 2012. The Complaint alleged, among other things, that Lubrizol had violated the Sherman and Clayton Acts and Michigan antitrust laws by purchasing Lockhart's oxidate business and obtaining a monopoly in the oxidate-production market. On August 17, 2012, Lubrizol filed a motion to dismiss the First Amended Complaint for failure to state a claim upon which relief might be granted, and on February 5, 2013, the district court granted the motion after determining that all of the claims were time-barred. Z Technologies appeals the dismissal.

## II. ANALYSIS

All of Z Technologies's claims, including the Sherman Act, Clayton Act, and Michigan Antitrust claims, are subject to a four-year and forty-day statute of limitations.[1] *See* 15 U.S.C. § 15b ("Any action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued. No cause of action barred under existing law on the effective date of this Act shall be revived by this Act."); Mich. Comp. Laws §§ 445.781, 445.784(2) (2009) ("It is the intent of the legislature that

---

[1] As previously discussed, the Federal Trade Commission filed a complaint against Lubrizol on February 26, 2009, and then resolved the complaint by consent decree on April 7, 2009. The statute of limitations is generally suspended during the pendency of any civil or criminal proceeding instituted by the United States, and Z Technologies argues that this forty-day period should be added to the statute of limitations under 15 U.S.C. § 16(i). *See Yoder Bros., Inc. v. California-Florida Plant Corp.*, 537 F.2d 1347, 1361 (5th Cir. 1976) ("The tolling provision of the statute has the effect of giving antitrust plaintiffs a period of four years plus the length of the Government suit for which they can recover."). Assuming Z Technologies is correct and the forty days should be added, we are presented with a statute of limitations of four years and forty days.

in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes, including, without limitation, the doctrine of *per se* violations and the rule of reason."); *see also DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467 (6th Cir. 1996).

Lubrizol acquired Lockhart's oxidate business on February 7, 2007, and Z Technologies filed its Complaint on May 18, 2012, approximately five years and three months later. At first glance, Z Technologies's claims appear to be barred by the statute of limitations. The primary question presented on appeal, then, is whether Lubrizol's conduct subsequent to the acquisition, including charging "supra-competitive" prices and enforcing a non-compete clause from the acquisition agreement, retriggered the date from which the statute of limitations is measured. We assess this question claim by claim.

1. **Standard of Review**

This court reviews de novo a district court's ruling granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Dubay v. Wells*, 506 F.3d 422, 427 (6th Cir. 2007). When reviewing pleadings, "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"In deciding whether to grant a Rule 12(b)(6) motion, we must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations [of the plaintiff] as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004) (internal citation and quotation marks omitted). "Although this standard for Rule 12(b)(6) dismissals is quite liberal, more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (internal citation and quotation marks omitted).

No. 13-1254        Z Tech. Corp. v. Lubrizol Corp.                        Page 5

### 2. Sherman Act Claim

Z Technologies first alleges a violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. The district court determined that the statute of limitations prevented the claim from proceeding. We agree.

The Sherman Antitrust Act makes it an offense to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." *Id.* Claims brought under the Act are subject to a four-year statute of limitations from the date "the cause of action accrued." *Id.* § 15b; *see also Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 338 (1971).

Z Technologies alleges a "continuing antitrust" violation; that is, a violation where Z Technologies's interests "[we]re repeatedly invaded." *Peck v. Gen. Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990) (*per curiam*). When a continuing violation occurs, "the statute of limitations runs from the commission of the act that causes the plaintiff's damage." *Id*. As the *Peck* court further clarified, "even when a plaintiff alleges a continuing violation, an *overt act* by the defendant is required to restart the statute of limitations and the statute runs from the last overt act." *Id.* (emphasis added) (internal citation and quotation marks omitted). Before assessing, however, whether the overt act requirement has been satisfied in the present case, we must determine whether the continuing violations doctrine even applies to price increases following a merger or acquisition. We conclude that it does not.

### A. *The Continuing Violations Doctrine Does Not Apply to Price Increases Following a Merger or Acquisition*

Z Technologies argues that the continuing violations doctrine applies to a price increase following a merger or acquisition.[2] There is simply no support for this contention. With only two exceptions, all of the cases cited by Z Technologies in which a price increase extended the

---

[2] Z Technologies discusses extensively two district court cases, *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-md-2343, 2013 WL 2181185, at *27–29 (E.D. Tenn. May 20, 2013), and *In re Wholesale Grocery Products Antitrust Litig.*, 722 F. Supp. 2d 1079, 1086–89 (D. Minn. 2010). As both of these cases involved price increases brought in *conspiracy* claims, not in merger monopolization or unilateral monopolization claims, they provide little guidance as to whether price increases that are not the result of two companies conspiring together should be treated as an overt act.

2:12-cv-12806-DPH-MKM Doc # 17 Filed 05/23/14 Pg 6 of 18 Pg ID 205 (6 of 18)

No. 13-1254         Z Tech. Corp. v. Lubrizol Corp.                    Page 6

statute of limitations involved antitrust conspiracy claims,[3] and the excepted cases involved monopolization claims where a party unilaterally monopolized a market or undertook action, in addition to price increases, to monopolize a market.[4] None of the cited cases indicate that a price increase following a merger or acquisition, by itself, extends the statute of limitations.

The focus on conspiracy cases for a continuing violations offense makes intuitive sense. In a conspiracy, each price increase requires further collusion between multiple parties to maintain the monopoly; in a merger-acquisition case, however, the cause of harm is the merger itself. The subsequent price increases do not further the company's monopoly because the company has already obtained the monopoly.

Observations from our sister circuits, as well as limited guidance from the Supreme Court, support our conclusion that price increases in the merger-acquisition context do not extend the statute of limitations. In *Concord Boat Corp. v. Brunswick Corporation*, the Eighth Circuit noted that "[c]ontinuing violations have not been found outside the RICO[5] or Sherman Act conspiracy context . . . because acts that simply reflect or implement a prior refusal to deal or acts that are merely unabated inertial consequences (of a single act) do not restart the statute of limitations." 207 F.3d 1039, 1052 (8th Cir. 2000) (internal citation and quotation marks omitted). Similarly, while the Supreme Court has never directly limited the scope of the continuing violations doctrine, it appears to have employed the doctrine only in conspiracy and

---

[3] *See In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 291 (4th Cir. 2007) (price-fixing conspiracy); *Morton's Mkt., Inc. v. Gustafson's Dairy Inc.*, 198 F.3d 823, 828 (11th Cir. 1999) (price-fixing conspiracy); *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1171–72 (3d Cir. 1993) (conspiracy by several railroads); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2013 WL 2181185, at *6–10 (conspiracy to restrain trade); *In re Wholesale Grocery Prods. Antitrust Litig.*, 722 F. Supp. 2d at 1082–83 (market and customer allocation conspiracy); *Molecular Diagnostics Labs. v. Hoffmann-La Roche Inc.*, 402 F. Supp. 2d 276, 278–79 (D.D.C. 2005) (conspiracy to maintain monopoly); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 525–26 (D.N.J. 2004) (conspiracy to restrain trade by delaying release of generic drug); *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 365–67 (S.D.N.Y. 2002) (conspiracy to restrain trade by listing nonapplicable patent); *In re Nine West Shoes Antitrust Litig.*, 80 F. Supp. 2d 181, 183–85 (S.D.N.Y. 2000) (price-fixing conspiracy).

[4] The first case cited by Z Technologies that does not involve a conspiracy claim is *Meijer, Inc. v. 3M*, No. 04-5871, 2005 WL 1660188 (E.D. Pa. July 13, 2005), but that case involved an attempt to maintain a monopoly by charging supra-competitive prices to suppress competition, not a merger acquisition resulting in a monopoly like in the present action. *Id.* at *4. The second case is *Free FreeHand Corp. v. Adobe Systems Inc.*, 852 F. Supp. 2d 1171 (N.D. Cal. 2012). There, contrary to Z Technologies's contention, the district court did not extend the statute of limitations solely on the basis of price. Instead, the district court determined that ceasing development of software, channeling existing customers to a different software, and bundling software constituted new post-merger acts that extended the statute of limitations. *Id.* at 1187. These types of overt acts that the district court relied upon in *Free FreeHand* are absent in the present case.

[5] *See* Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68.

(7 of 18)

*No. 13-1254*            *Z Tech. Corp. v. Lubrizol Corp.*                Page 7

monopolization cases not involving mergers or acquisitions. See, e.g., *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 189 (1997) *(RICO conspiracy where the Court observed* "in the case of a 'continuing violation,' *say, a price fixing conspiracy* that brings about a series of unlawfully high priced sales . . . each sale to the plaintiff, starts the statutory period running again" (emphasis added) (internal quotation marks omitted)); *Zenith*, 401 U.S. at 338–39 (involving a "continuing conspiracy to violate the antitrust laws"); *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 483–84 (1968) (applying continuing violations doctrine in a monopolization case not involving merger or acquisition); *see also* Phillip Areeda and Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶ 320, 297 (3d ed. 2007) ("While the cases are not consistent, they are significantly more likely to restart the statute when the action complained of is conspiratorial rather than unilateral.").

Similarly, this court has applied the continuing violations doctrine only to conspiracy claims, *see, e.g.*, *Peck*, 894 F.2d at 849; *Barnosky Oils, Inc. v. Union Oil Co. of Cal.*, 665 F.2d 74, 81 (6th Cir. 1981), and to unilateral monopolization claims when a party already possesses a monopoly and takes action to preserve the monopoly, *see, e.g.*, *DXS*, 100 F.3d at 467. We have not discovered a case, let alone a Sixth Circuit authority, nor has Z Technologies identified one, in which the continuing violations doctrine has been applied to price increases following a merger or acquisition. Taken altogether, it is clear from the complete absence of supporting case law that the continuing violations doctrine does not apply to such claims.

### B. *Price Increases Are Not Overt Acts*

Assuming *arguendo*, however, that the continuing violations doctrine does apply to a price increase following a merger or acquisition, the question still arises whether the price increases in the present case constitute "overt acts" that extend the statute of limitations. Again, Sixth Circuit precedent, leading antitrust commentators, and case law from our sister circuits all indicate that price increases in the merger-monopolization context are not "overt acts" extending the statute of limitations.

2:12-cv-12806-BPZ-MKM Doc # 17-5 Filed 05/23/14 Pg 8 of 18 Page ID 207 (8 of 18)

*No. 13-1254*        *Z Tech. Corp. v. Lubrizol Corp.*                    Page 8

i. *Under Sixth Circuit precedent, price increases are not overt acts.*

Our Sixth Circuit cases clearly indicate that price increases following a merger or acquisition are not overt acts. The most important tenet of the Sixth Circuit's continuing violations doctrine is that "a newly accruing claim for damages must be based on some injurious act actually occurring during the limitations period, not merely the abatable but unabated inertial consequences of some pre-limitations action." *Barnosky Oils*, 665 F.2d at 81 (internal citation and quotation marks omitted). Put more simply, an overt act "(1) . . . must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) . . . must inflict a new and accumulating injury on the plaintiff." *DXS*, 100 F.3d at 467 (internal citation and quotation marks omitted). Based upon this principle, the Sixth Circuit has repeatedly rejected invocations of the continuing-violations defense that are mere reaffirmations of a previous act.

This principle was first expressed in *Barnosky Oils, Inc., v. Union Oil Company of California*. There, we rejected the argument that a seller, who "benefitted" from later sales made under an anticompetitive contract, was not protected by the statute of limitations because of the continuing violations doctrine:

> That [the plaintiff] may have suffered, and [the defendant] *may have benefitted, from the consequences of [the defendant's] conduct during the limitations period does not render the act a continuing violation of the antitrust laws.* The 'unabated inertial consequences' of the 1971 contract are qualitatively distinct from the acts that gave rise to continually accruing causes of action . . . .

*Barnosky Oils*, 665 F.2d at 82 (emphasis added) (internal citation and quotation marks omitted). More recently, in *Grand Rapids Plastics, Inc., v. Lakian*, this court again declined to apply the continuing violations doctrine because "even if the payment agreement [which permitted payment of unlawful commissions] constituted a continuing violation . . . the individual payments to [the defendant] were only a manifestation of the previous agreement. The individual payments therefore do not constitute a 'new and independent act,' as required to restart the statute of limitations." 188 F.3d 401, 406 (6th Cir. 1999).

Thus, while none of the cases address price increases *per se*, our decisions have repeatedly emphasized that profits, sales, and other benefits accrued as the result of an initial wrongful act are not treated as "independent acts." Rather, they are uniformly viewed as

2:12-cv-12806-BPZ-MKM Doc # 17 Filed 05/23/14 Pg 9 of 18    Pg ID 208    (9 of 18)

No. 13-1254          Z Tech. Corp. v. Lubrizol Corp.                Page 9

"ripples" caused by the initial injury, not as distinct injuries themselves. *See e.g.*, *Peck*, 894 F.2d at 849 (rejecting a continuing violations defense even though plaintiffs alleged they had felt the adverse impact of the defendant's conspiracy within the timeframe permitted by the statute of limitations); *Eichman v. Fotomat Corp.*, 880 F.2d 149, 160 (9th Cir. 1989) ("[R]eceipt of profits from an illegal contract by an antitrust defendant is not an overt act of enforcement which will restart the statute of limitations."). There is no compelling reason to treat profits derived from a price increase differently.

Each of the cases discussed so far have involved a determination that the defendant's conduct did *not* constitute an independent action for continuing violations purposes. It is helpful therefore to review what has been considered an independent violation. In *DXS, Inc. v. Siemens Medical Systems, Inc.*, for example, Siemens, which both sold and serviced x-ray equipment, established a policy restricting third-party maintenance of equipment originally manufactured by Siemens. 100 F.3d at 467–68. Almost two years after nominally creating the policy, Siemens made misrepresentations to several hospitals regarding its warranties and thereby harmed the plaintiff, a third-party service provider. *Id.* On review, we found that the plaintiff's claims were not time barred after determining that the continuing violations doctrine applied. *Id.* To reach this conclusion, the court assessed whether a series of letters sent to local hospitals by Siemens to convince them to abandon the competing third-party servicer were mere "reaffirmations" of the previously announced policy or constituted a "new and independent act." *Id.* We found that they were "new and independent" because the previously announced policy had not been "final" and had not been enforced for two years. *Id.*

The present case is clearly distinct from the situation presented in *DXS*. While *DXS* involved a policy shift and "new" conduct designed to further a monopolistic goal, here the only conduct complained of were the price increases. No new or subsequent action was undertaken to obtain a monopoly because one had already been accomplished and, as the *DXS* court acknowledged, "[i]f, as the district court assumed, Siemens had implemented its new policies from the date of the [original policy], then the court might have been correct in concluding that Siemens's statements were merely effects of the [original policy] that caused no new injury to DXS." *Id.* at 468. The conduct at issue in this case falls squarely within this illustration. There

is no question that the ability to affect market prices arising out of the acquisition of Lockhart's oxidate business was complete at the time of the merger. Thus, under *DXS* and in light of other Sixth Circuit case law indicating that benefits and profits derived from wrongful conduct are not "independent" overt acts but, rather, reaffirmations of a previous act, we conclude that price increases do not constitute overt acts for purposes of the continuing violations doctrine.

> ii. *Leading antitrust commentators and other circuits also indicate that price increases, like those that occurred in this case, are not overt acts.*

Our conclusion that price increases, such as the ones that occurred in this case, are not overt acts is supported by leading commentators and our sister circuits. It is axiomatic that horizontal mergers,[6] such as the one that took place in the present case, lead to a concentrated market position and enable the merged company to reduce output and to raise prices. *See Antitrust*, ¶ 320, at 288. As Professor Areeda explains:

> [I]t would seem that *high prices following an anticompetitive merger or the creation of a monopoly are mere 'inertial consequences' that one naturally expects to flow from such acts*. An automatic and thus 'inertial' consequence of a merger is the making of subsequent sales. By contrast, a series of ongoing meetings to correct a cartel and adjust its prices is hardly 'inertial,' but manifest a commitment to renewing the competitive act. Most of the decisions are consistent with these observations.

*Id.* (emphasis added). "If the mere charging of a monopoly price constitutes a 'continuing violation' tolling the statute, then we have indefinitely lengthened the statute of limitation on claims of successful monopolization," *id.* at 286, and in the process, eliminated repose for the merged party contrary to congressional intent.

This precise point was also made by the Eighth Circuit in *Midwestern Machinery Co. v. Northwest Airlines*, albeit in the context of a merger claim brought under § 7 of the Clayton Act, which governs mergers or acquisitions resulting in monopolization. 392 F.3d 265, 269 (8th Cir. 2004). In that case, following the merger of Northwest Airlines and Republic Airlines, the plaintiffs alleged that Northwest charged a "hub premium," essentially a price increase for flights

---

[6] Horizontal mergers occur when "one firm acquires another firm that produces and sells an identical or similar product in the same geographic area, and thereby eliminates competition between the two firms." 3 West's Fed. Admin. Prac. § 3067. "[U]nification of the merging firms' operations may create substantial market power and could enable the merged entity to raise prices by reducing output unilaterally." *Id.* § 3068.

2:12-cv-02806-PDB-MKM Doc # 17-5 Filed 05/23/14 Pg 11 of 18    Pg ID 210    (11 of 18)

No. 13-1254         Z Tech. Corp. v. Lubrizol Corp.                    Page 11

through the Minneapolis-St. Paul Airport, and that its action constituted a continuing violation allowing the plaintiff to avoid the statute of limitations bar. *Id.* The court rejected this argument explaining,

> If the initial violation was the merger itself, none of the "continuing violations" [the plaintiff] alleges can justify restarting the statute of limitations because these acts were not undertaken to further an illegal policy of merger or to maintain the merger . . . . *Once the merger is completed, the plan to merge is completed, and no overt acts can be undertaken to further that plan.*
>
> Unlike a conspiracy or the maintaining of a monopoly, a merger is a discrete act, not an ongoing scheme. . . . Even if the initial merger violated § 7, it makes little sense to hold that policies were pursued to effectuate the illegal merger as we might in a case involving a conspiracy violating § 1 (e.g., cartel meetings occurred to effectuate a price-fixing agreement) or a case violating § 2 (e.g., ongoing policy of predatory pricing undertaken to effectuate monopolization). Once a merger is completed, there is no continuing violation possible under § 7 that would justify extending the statute of limitations beyond four years.

*Id.* at 271 (emphasis added). Z Technologies argues that the above language, which strongly indicates that a merger is a discrete act and that subsequent price increases are not overt acts, should not be considered because *Midwestern Machinery* involved a Clayton Act claim, while the present claim arises under the Sherman Act.[7]

Although it is true that the Sherman Act regulates a broader swath of conduct than the Clayton Act, the claim in the present case is for an acquisition-merger monopoly, which is the precise conduct governed by the Clayton Act. There is no reason to treat the same conduct differently in sister statutes that are designed to promote the same legislative objective. Moreover, the same statute—15 U.S.C. § 15b—provides the statute of limitations for each. There is nothing in 15 U.S.C. § 15b that suggests it should be applied one way for merger-acquisition claims under the Sherman Act but differently for merger-acquisition claims under the Clayton Act.

---

[7]Admittedly, there is dicta in *Midwestern Machinery* suggesting that the continuing violations doctrine should remain viable under the Sherman Act. But the *Midwestern Machinery* court also indicated that "continuing violations restart the statute of limitations when there is an ongoing scheme, such as a price-fixing conspiracy or an attempt to monopolize." 392 F.3d at 275. As this quote reveals, the *Midwestern Machinery* court believed that the continuing violations doctrine could be employed for claims of conspiracy or for maintaining a monopoly, but at no point did it expressly indicate that the continuing violations should be applicable to Sherman *merger or acquisition* claims. *Id.* This would have undercut the very logic that upheld the opinion.

2:12-cv-12806-PJZ-MKM Doc # 17-5 Filed 05/23/14 Pg 12 of 18 Pg ID 211    (12 of 18)

No. 13-1254          Z Tech. Corp. v. Lubrizol Corp.                      Page 12

Finally, Z Technologies argues that "[h]ad Lubrizol not raised prices and drawn the attention of the Federal Trade Commission, it could have waited until the passing of the four year statute and raised prices without consequences, but for an exception to the limitations period." Perhaps so. But this is not what occurred. Z Technologies was repeatedly harmed *within* the limitations period, and it chose not to bring suit. This is precisely the type of conduct that the statute of limitations is designed to prevent—parties sleeping on their rights. Moreover, because we want to encourage plaintiffs not to sit on their rights, the statute of limitations is not extended under the continuing violations doctrine if the plaintiff had actual knowledge of the initial violation and suffered an injury. *See Antitrust Law*, ¶ 320c1 at 282, 289 ("Repose is especially valuable in antitrust, where tests of legality are often rather vague, where many business practices can be simultaneously efficient and beneficial to consumers but also challengeable as antitrust violations."); *see also* Kyle Graham, *The Continuing Violations Doctrine*, 43 GONZ. L. REV. 271, 313–15 (2008). This general rule is particularly apt with respect to private antitrust suits that are "allowed to correct public wrongs." *Midwestern*, 392 F.3d at 272. By encouraging parties to bring suits earlier, the statute of limitations attempts to minimize the public harm that might arise from harmful monopolies, while promoting mergers by preserving repose for merged entities.

Thus, Sixth Circuit precedent indicates price increases should not be treated as overt acts. Because this position is consistent with others circuits and leading commentators, we conclude that the price increases in the present case were not overt acts that extended the statute of limitations.

### C. *The Alleged Implementation of the Non-Compete Clause Is Not an Overt Act*

Z Technologies next argues that Lubrizol "prevent[ed] the Flint [P]lant from being re-leased" and that this conduct constitutes an overt act for purposes of the continuing violations doctrine. There is little proof to support this claim, apart from the mere existence of the non-compete provision and a reference in the FTC complaint that "Lubrizol subsequently indicated that this provision barred Lockhart from leasing its plant in Flint, Michigan, to another oxidates manufacturer." As Z Technologies admits, "Exactly what happened with the interpretation of

2:12-cv-02806-PDB-MKM Doc # 17 Filed 05/23/14 Pg 13 of 18 Pg ID 212    (13 of 18)

*No. 13-1254*        *Z Tech. Corp. v. Lubrizol Corp.*        Page 13

this purchase agreement is not clear in the absence of discovery." Nonetheless, Z Technologies hypothesizes that "Lubrizol needed to take some action after its purchase to effect this outcome."

Unfortunately for Z Technologies, it has not raised its factual allegations above a "speculative level." *Bell Atl.*, 550 U.S. at 555. Z Technologies would have us assume not only that Lubrizol undertook an unknown action at an unknown time blocking the re-lease of the Flint Plant, but also that this conduct was illegal and took place within four years and forty days of the filing of the present suit. As the Supreme Court cautioned in *Bell Atlantic*, a "conclusory allegation of [wrongful conduct] at some unidentified point does not supply facts adequate to show illegality." *Id.* at 556. Thus, as the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown— that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 670 (internal citation and quotation marks omitted).

Even were this not the case, the implementation of the non-compete clause, which was originally entered into at the time of the merger, does not constitute a "new and independent" act. Under a contrary ruling, any contractual provision that was subsequently enforced would arguably restart the statute of limitations, raising the risks associated with mergers and thereby discouraging companies from merging. As discussed above, reaffirmations of a previously announced policy, such as an acquisition or merger, are not considered overt acts, and therefore, the continuing violations doctrine does not apply. For these reasons, the enforcement of a non-compete clause is not an overt act extending the statute of limitations under the continuing violations doctrine.

As the continuing violations doctrine does not apply in the present case, we AFFIRM the district court's dismissal of the Sherman Act claim on statute of limitations grounds.

### 3. Clayton Act Claim

Z Technologies also alleges a hold-and-use violation under the Clayton Act. *See United States v. ITT Continental Baking Co.*, 420 U.S. 223, 240 (1975) (indicating that the Clayton Act regulates "holding as well as obtaining assets"). The Clayton Act is an incipiency statute designed to arrest and prohibit mergers and acquisitions that "lessen competition" or "tend to

2:12-cv-12806-PZ-MKM Doc # 17 Filed 05/23/14 Pg 14 of 18 Pg ID 213    (14 of 18)

No. 13-1254        Z Tech. Corp. v. Lubrizol Corp.                    Page 14

create monopoly." 15 U.S.C. § 18; *see United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 589 (1957). As with the Sherman Act, a Section 7 cause of action challenging an acquisition accrues at the time of the merger or acquisition, and there is a four-year statute of limitations. *15 U.S.C. § 15b; Concord, 207 F.3d at 1050.* Similar to a continuing violation under the Sherman Act, "different uses of assets can justify restarting the statute of limitations" for a Clayton Act violation. *Midwestern*, 392 F.3d at 272, 275. If the assets are held and used in the same manner as when they were acquired, the continued use is treated as an "unabated inertial consequence of the merger." *Id.* at 272. But "[i]f assets are used in a different manner from the way that they were used when the initial acquisition occurred, and that new use injures the plaintiff, he or she has four years from the time that the injury occurs to sue." *Id.* at 273. This analysis is referred to as the "hold-and-use" doctrine.

Z Technologies makes two hold-and-use claims: (1) that Lubrizol caused the non-competition clause "to be interpreted to prevent the re-leasing of the Flint oxidates plant;" and (2) that Lubrizol "prevented the Flint [P]lant from being re-leased to prospective oxidates manufacturers." Essentially, Z Technologies argues that the purported use of the non-competition clause constituted a new use of an "asset" that extends the statute of limitations.

This claim is also highly speculative in nature and does not satisfy the pleading standards established under *Twombly* and *Iqbal*. *Twombly*, 550 U.S. at 556. But even if Z Technologies had provided more detailed facts, the complaint still fails to supply a basis for the conclusion that Lubrizol used the non-compete clause in a new or different manner. *Midwestern*, 392 F.3d at 272. The non-compete prohibited certain conduct at the time of signing and likewise prohibited the same conduct a few years later. If the enforcement of a contractual provision, which was included in the acquisition agreement presumptively to ensure certain conduct or to protect certain rights, constitutes a "new" use of that provision, this will effectively undermine merger-acquisition agreements and subject them to continual challenge.

Tellingly, Z Technologies has not cited to a single case where implementation of a contractual provision was found to violate the Clayton Act, and the cases actually cited illustrate a far more circumscribed notion of what constitutes a "new and independent" act. For example, in *Free FreeHand Corporation v. Adobe Systems Inc.*, the district court found that ceasing

2:12-cv-12806-PJZ-MKM Doc # 17 Filed 05/23/14 Pg 15 of 18 Pg ID 214 (15 of 18)

No. 13-1254      Z Tech. Corp. v. Lubrizol Corp.      Page 15

development of software, channeling existing customers to a different software, and bundling software constituted new post-merger acts. 852 F. Supp. 2d 1171, 1187 (N.D. Cal. 2012). But as the district court emphasized, there was no indication that any of this conduct stemmed from the merger or was included in the agreement creating the merger. *Id.* ("Just as in *Smith v. eBay,* where plaintiffs' monopolization claim was not based '*solely* on the fact that eBay acquired Paypal,' here, Plaintiffs' claims are not based solely on the fact that Adobe acquired Macromedia." (internal citation omitted)). The same cannot be said here when the subsequent action allegedly undertaken was a direct result of a term from the acquisition agreement. *See also Midwestern*, 392 F.3d at 276 (rejecting the hold-and-use argument after determining that market power acquired by the defendant as a consequence of the merger was not an "asset" and had not been used differently); *Concord*, 207 F.3d at 1051 (rejecting the hold-and-use argument because no evidence was shown of a different use and because the acquisition was public knowledge).

As the assets have not been used in a "new" fashion, we AFFIRM the district court's grant of summary judgment on statute of limitations grounds for the Clayton Act claim.

### 4. Michigan Antitrust Claims

The statute of limitations on the Michigan antitrust claims is also four years and forty days, *see* Mich Comp. Laws § 445.781, and Michigan has expressly indicated that "in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes," Mich. Comp. Laws § 445.784(2). Thus, Z Technologies's state law claims rise and fall with its federal antitrust claims. *See Little Caesar Enters. v. Smith*, 895 F. Supp. 884, 898 (E.D. Mich. 1995) ("Michigan antitrust law is identical to federal law and follows the federal precedents."). As the district court correctly determined that the Sherman and Clayton Act claims are barred by the statute of limitations, we also AFFIRM the dismissal of the Michigan antitrust claims.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of the motion to dismiss.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 13-1254

Z TECHNOLOGIES CORPORATION,

    Plaintiff - Appellant,

v.

THE LUBRIZOL CORPORATION,

    Defendant - Appellee.

**FILED**
*May 23, 2014*
DEBORAH S. HUNT, Clerk

Before: DAUGHTREY, McKEAGUE, and DONALD, Circuit Judges.

**JUDGMENT**

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the district court's grant of the motion to dismiss is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk

## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  | 100 EAST FIFTH STREET, ROOM 540 |  |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: May 23, 2014

Ms. Elizabeth Ann Grove
The Lubrizol Corporation
29400 Lakeland Boulevard
Wickliffe, OH 44092

Mr. Justin J. Hakala
Morgan & Meyers
3200 Greenfield Road
Suite 260
Dearborn, MI 48120

Re: Case No. 13-1254, *Z Technologies Corporation v. The Lubrizol Corporation*
Originating Case No. : 2:12-cv-12206

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Dixie Aerni
Deputy Clerk

Enclosures

Mandate to issue.